**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1494-23

IN THE MATTER OF
RODNEY LONG
FIREARMS APPEAL.

_____

Submitted November 6, 2025 – Decided February 18, 2026

Before Judges Currier, Berdote Byrne and Jablonski.

On appeal from the Superior Court of New Jersey, Law Division, Warren County, Docket No. GP-175-22.

Evan F. Nappen, Attorney at Law PC, attorneys for appellant Rodney Long (Louis P. Nappen, on the brief).

Jessica L. Cardone, Acting Warren County Prosecutor, attorney for respondent State of New Jersey (Ben Weathers, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

Matthew J. Platkin, Attorney General, attorney for amicus curiae Attorney General of New Jersey (Sookie Bae-Park, Assistant Attorney General, of counsel; Tim Sheehan, Andrew H. Yang, Amanda I. Morejón and Monica E. Finke, Deputy Attorneys General, on the brief).

PER CURIAM

This appeal arises out of the trial court's December 12, 2023 order denying appellant's application for a Firearms Purchaser Identification Card (FPIC) and permit to purchase a handgun. The trial court found that based on the totality of appellant's history, approval of the application would not be in the interest of public health, safety, or welfare under N.J.S.A. 2C:58-3(c)(5). We affirm the trial court's well-reasoned decision.

I.

After appellant applied for a FPIC and permit to purchase a handgun to the Independence Township Police Department, the Department commenced its investigation, conducting background and criminal history checks and reviewing reports of appellant's prior interactions with police. The officer in charge[1] denied the application, citing as the primary reason "[p]ublic health, safety and welfare."

Appellant appealed and the trial court held two days of hearings in October and December 2023. At the time, appellant was a fifty-five-year-old man working as a safety engineer/project manager. Until July 2022, appellant

---

[1] Independence Township did not have a Police Chief at the time.

A-1494-23

was living with his then-fiancée K.M.,[2] her three children from a prior relationship, and their own young child. He testified on his own behalf.

Department officers testified, detailing a series of domestic incidents and police contacts occurring from 2008 to 2022 which involved appellant and intimate partners or household members. The officer in charge denied the application because of the history of domestic violence related incidents and appellant's controlling behavior.

The court admitted relevant police records into evidence detailing these interactions. The first incident discussed occurred in 2008 and involved appellant's then-girlfriend (later wife and ex-wife) who alleged the couple had an argument during which he struck her in the face with a cake and as she turned to avoid it, she struck the wall, causing a laceration to her head. Appellant was charged with an act of domestic violence and simple assault. The charges were later dismissed.

Another incident occurred in 2015 when police responded to a dispute appellant had with his ex-wife and her daughter. The ex-wife reported appellant

---

[2]  We use initials because names of victims or alleged victims of domestic violence are excluded from public access under Rule 1:38(c)(12).

engaged in a physical struggle with her and bodily confronted his stepdaughter. Charges of simple assault were filed but later dismissed.

In 2019-2020, multiple reports were made regarding domestic disputes involving appellant, K.M., and her children, including: (1) appellant breaking down a door to get back his phone that K.M. took after learning appellant was cheating on her; (2) arguments during which appellant attempted to remove bedroom doors from hinges and angrily confronted household members; (3) appellant leaving the home with his infant child and driving with the child on his lap without a car seat (police issued traffic citations for this offense); and (4) an argument during which appellant alleged K.M. broke a coffee table and attacked him with a hammer.

To support his application on appeal before the trial court, appellant's counsel referred him for a psychological evaluation with David Goldstein, Psy.D., in October 2022. Dr. Goldstein did not find evidence of mental illness nor clinical psychopathology. He stated in his report:

> [Appellant's] interpersonal style seems best characterized as being domineering and overcontrolling. He has strong needs to control others and expects respect and admiration in return. He may be driven to appear competent and authoritative, and likely has little tolerance for those who disagree with his plans and desires. Others probably view him as being rather overbearing and dictatorial.

4

Dr. Goldstein concluded:

> It appears that accusations of [appellant] becoming physically aggressive were confined to relational issues with his ex-wife, as confirmed by multiple sources. While he has experienced verbal conflicts with his fiancée in the more recent past, these have not occurred for some time as both individuals report stability in their relationship for years. They also acknowledged participation in couples therapy, which has improved their communication and ability to handle conflicts with one another, thus contributing to this stability.

The psychologist rated appellant as a low risk of violence to himself or others and found him fit to possess firearms based on the clinical testing.

The month after the initial October 2022 psychological evaluation, and before the final hearing on the permit application, K.M. reported an additional domestic dispute in November 2022. After appellant detected irregularities in a bank account, he accused K.M. of theft, changed the locks on the family residence, put plywood over the doors, and refused to allow K.M. access to the home to retrieve belongings for herself and her children. Appellant reported to police that he saw someone on his Ring camera trying to get into his house. When police contacted appellant to advise him that K.M. had a right to get into the house, where she resided, to get items for the children's basic needs and clothing, appellant said K.M. could buy the children new clothes and refused to

let her enter the home. K.M. sought, but was denied, a temporary restraining order by both the municipal and Superior Court.

Appellant returned to Dr. Goldstein for a second psychological evaluation in August 2023, including a discussion of the November 2022 events. Unlike the first evaluation, the doctor did not contact K.M. for an interview. Dr. Goldstein reported:

> [Appellant] remains calm and unruffled even when confronted by unexpected occurrences. He takes things as they come without fear or apprehension[] and usually maintains self-control even in a crisis situation.
>
> . . . [Appellant] appears to be even-tempered and level-headed. He carefully considers the future before acting[] and generally has the patience to cope with a lengthy and tedious task. . . .
>
> . . . .
>
> The overall results of the present evaluation, with a reasonable degree of psychological certainty, which is based on updated psychological testing, clinical interview, and collateral interview, indicate that [appellant] continues to not suffer from a mental illness, and continues to be considered low risk and mentally/emotionally fit to possess a firearm at the present time. Furthermore, such possession would not present a danger to himself or others.

A-1494-23

In its cogent oral decision, the trial court found the officers' testimony credible, reviewed the evidence and considered the applicable statutes and case law. The court noted appellant had "two arrests for domestic violence, a simple assault in Edgewater [in] July . . . 2008 and . . . September 17, 2015[] [although b]oth cases were dismissed." Additionally, the testimony "revealed that appellant had been involved in numerous domestic violence-related incidents between 2008 and up through, . . . November . . . 2022." The court detailed the multiple incidents and noted they "involved two different women; . . . appellant's ex-wife and his . . . now ex-fiancée."

In considering Dr. Goldstein's reports and testimony, the court found:

> [H]e had a very clear bias in favor of . . . appellant. And that's simply because he was hired by . . . appellant to conduct the evaluation and interview. So that's not surprising. I don't know how one can say that he was not biased in favor of . . . appellant right out of the box there.
>
> I'm not saying that he intentionally misled the [c]ourt or that he lied to the [c]ourt. . . . But his whole assessment of . . . appellant and his overall involvement in this case is already, at the outset, so heavily slanted in favor of . . . appellant that his testimony and conclusions are really not useful to this [c]ourt.
>
> I'm simply saying that he was not a neutral [or] objective witness. He said things like he doesn't believe

. . . appellant has a violent bone in his body. Well, I don't know how the [d]octor could say something like that with a straight face if he had read the [fourteen] police reports and he was truly objective. Even giving the benefit of the doubt to . . . appellant.

He said also that despite these numerous incidents of domestic violence he did not feel that's who . . . appellant is on a regular basis. He steadfastly defended . . . appellant to the point where it was obvious that he would pretty much say anything to portray . . . appellant in a good light.

Even when the [d]octor did concede that some of . . . appellant's past behavior was not appropriate, he minimized it or dismissed it. For instance, when the State asked on cross w[h]ether he believed that . . . appellant was even-tempered, the [d]octor responded "not in those instances but I think he's learned from the incidents."

But even if you put the [d]octor's bias aside, it's very important to note that his evaluation and conclusions were based almost entirely on information which . . . appellant himself had self-reported to the [d]octor. And the only arguably objective items which the [d]octor reviewed, . . . were the police reports of the prior incidents, [which] were not objectively assessed by him.

Instead, Dr. Goldstein accepted as true appellant's version of events rather than reviewing each incident neutrally and with an acknowledgment that . . . appellant may have been the aggressor in at least some of the incidents, or that he might not be telling the truth about what actually happened in each incident.

A-1494-23

Additionally, Dr. Goldstein accepted at face value the statements that . . . appellant's ex-fiancé[e] made during her interview, including her minimization of past events despite her obvious bias in support of appellant's desire to obtain a handgun.

And really, crucially, I think this is very important, Dr. Goldstein did not re-interview the ex-fiancé[e] to obtain her versions of events of the November [2022] incident or incidents when he was preparing the supplemental report.

And, you know, the [d]octor said on cross examination he didn't interview the ex-fiancé[e] again after the November 2022 incident because he didn't think she would be honest and be able to provide clarity of the incident. But it's very clear, and he pretty much acknowledged it, that you know, he did not want to re-interview her because he knew that she would likely now have many bad things to say about . . . appellant because their relationship had fallen apart.

. . . .

So, instead of contacting the ex-fiancé[e] for the supplementary report, he chose instead to interview . . . appellant's long[-]time friend . . . . [and] admitted on cross that he knew that [the friend] would be biased in favor of . . . appellant. . . .

So[,] in sum, Dr. Goldstein's evaluation turns out to be very biased and woefully incomplete, I find.

A-1494-23

The court also noted that appellant's friend admitted at the hearing that he did not know any of the details of the domestic violence incidents that occurred between appellant and his ex-wife or ex-fiancée.

The court found appellant was not credible as he did not take responsibility for any of his actions, and his testimony regarding the incidents of domestic violence was in direct conflict with the police reports. For example, appellant testified: (1) he never pushed the cake into his ex-wife's face and had no explanation for how she sustained a laceration, contradicting an earlier admission in the police report; (2) during another incident he did not put his hands on anyone or break a door, contradicting an earlier admission in the police report; (3) as to the 2019 incident, he was blameless, contrary to admissions in the police report; and (4) during the 2020 incident he had a car seat and the officer was wrong to report that he drove without having the infant in a car seat.

The court concluded:

> [A]ppellant has, over the course of many years, shown a persistent lack of self[-]control, an [in]ability to control his anger. He's shown impulsive[ness and] poor judgment as evidenced by all these encounters. And he may have been respectful to the police when they arrived, but that doesn't carry the day. His repeated displays of these very troubling personality issues over the course of years, which required repeated police intervention, they're very strong predictors of future behavior.

A-1494-23

. . . .

He has time and time again shown these personality traits, and these are traits which support a conclusion that he lacks the essential character of temperament necessary to be entrusted with a firearm. In this case, objectively viewing all the evidence in this case, the [c]ourt concludes that the [Department] has established by a preponderance of the evidence that pursuant to N.J.S.A. 2C:58-3(c)(5) that issuance of a firearms purchaser ID card and a permit to purchase a handgun would not be in the interest of the public health, safety or welfare because . . . appellant is lacking the essential character of temperament necessary to be entrusted with a firearm.

The facts and circumstances of appellant's numerous past domestic incidents justify the denial of the application pursuant to that section of the statute. So[,] for all these reasons . . . appellant's firearms appeal is denied.

After appellant filed the Notice of Appeal, we granted the Attorney General leave to appear as amicus curiae.

III.

On appeal, appellant raises the following points for our consideration:

I.   THE [TRIAL] COURT['S] . . . REFUSAL TO ACCEPT THE UNREBUTTED, EXPERT DOCTOR'S EVALUATION AND TESTIMONY CONSTITUTES AN ADDED CONDITION CONTRARY TO N.J.S.A. 2C:58-3C(3) AND N.J.S.A. 2C:58-3F

II.     THE [TRIAL] COURT['S] FINDING(S) CONSTITUTES AN ABUSE OF DISCRETION

III.    THE [TRIAL] COURT . . . BASED ITS DECISION UPON HEARSAY CONTRARY TO WESTON

IV.     THE [TRIAL] COURT . . . ERRED IN FINDING THAT APPELLANT'S CHARACTER OF TEMPERAMENT MAKES HIM A DANGER TO THE PUBLIC HEALTH, SAFETY OR WELFARE

V.      SINCE THE [TRIAL] COURT . . . FAILED TO MAKE THE FINDING REQUIRED UNDER RAHIMI FOR EVEN TEMPORARY DISARMAMENT, IT SHOULD BE REVERSED

VI.     THE CLEAR LANGUAGE OF N.J.S.[A.] 2C:58-3D, WHICH STATES THAT "NO FILING FEE SHALL BE REQUIRED," THE [TRIAL] COURT . . . ERRED BY NOT ORDERING THE REIMBURSEMENT OF THE FILING FEE THAT WAS DEMANDED OF APPELLANT TO APPEAL HIS DENIAL

VII.    IT IS RESPECTFULLY REQUESTED THAT ANY OPINION REFERENCE APPELLANT BY HIS INITIALS

The Attorney General supports the State's position opposing the appeal and argues that N.J.S.A. 2C:58-3(c)(5)(1) prevents the issuance of permits to persons likely to pose a danger to the public, focusing on past conduct as predictive of dangerousness, and "public health, safety or welfare" remains a

12                                                    A-1494-23

permissible standard even after the United States Supreme Court's ruling in United States v. Rahimi, 602 U.S. 680 (2024).

To purchase a handgun in New Jersey, a person must apply for a FPIC and a permit. N.J.S.A. 2C:58-3. Unless a "person is known in the community in which the person lives as someone who has engaged in acts or made statements suggesting the person is likely to engage in conduct, . . . that would pose a danger to self or others . . ." they must be issued a FPIC and permit unless, among other reasons not relevant for purposes of this appeal, "issuance would not be in the interest of the public health, safety or welfare." N.J.S.A. 2C:58-3(c)(5); N.J.A.C. 13:54-1.5(a)(5).

The chief of police of the municipality where the applicant resides makes the initial decision of whether to grant a FPIC application. N.J.S.A. 2C:58-3(d). A chief of police has the discretion, "subject to standards which have been adjudged constitutionally adequate," to grant or deny an application for a FPIC. Weston v. State, 60 N.J. 36, 43 (1972); N.J.S.A. 2C:58-3(d). "'The function of the [p]olice [c]hief as the local administrative official charged with responsibility for the original decision to grant or withhold the [FPIC] involves largely the exercise of an informal discretion[,]' based upon the information disclosed by 'a good faith investigation.'" In re Application of Boyadjian, 362

N.J. Super. 463, 475 (App. Div. 2003) (third and fourth alterations in original) (citations omitted) (quoting Weston, 60 N.J. at 45). In making the initial decision, it is the police chief's duty to "investigate" an application for a FPIC and permit and grant it "upon determining that the application is complete" and "provided the requirements of [N.J.S.A. 2C:58-3] are met." N.J.S.A. 2C:58-3(f). "In performing his administrative function[,] the chief of police proceeds informally, . . . gathering the information upon which his decision is then based." Weston, 60 N.J. at 43.

Thereafter, a "person aggrieved by the denial of a permit or identification card may request a hearing" in the Superior Court. N.J.S.A. 2C:58-3(d); N.J.A.C. 13:54-1.12(a). Judicial review of the chief of police's decision is de novo, but the court "should give appropriate consideration to the [c]hief's investigative experience and to any expertise he appears to have developed in administering the statute." Weston, 60 N.J. at 46.

In reviewing a trial court's decision, "an appellate court should accept a trial court's findings of fact that are supported by substantial credible evidence." In re J.W.D., 149 N.J. 108, 116 (1997). Where the evidence is mostly testimonial and involves questions of credibility, deference to a trial court's findings of fact is particularly appropriate. Id. at 117. This court will not,

14

therefore, disturb a trial court's findings of fact unless those findings would result in an injustice. Ibid. (citing Rova Farms Resort v. Invs. Ins., 65 N.J. 474, 483-84 (1974)). "If, however, an appellate court is reviewing a trial court's legal conclusions, the same level of deference is not required." In re J.W.D., 149 N.J. at 117 (citations omitted).

## A.

Appellant asserts the trial court erred in rejecting Dr. Goldstein's unrebutted findings as biased and not neutral, which is not a statutory basis for rejection of his application under N.J.S.A. 2C:58-3(f). We disagree.

It is well established that a court need not give an expert's opinion "greater weight than other evidence nor more weight than it would otherwise deserve in light of common sense and experience." Torres v. Schripps, Inc., 342 N.J. Super. 419, 430 (App. Div. 2001) (citing In re Yaccarino, 117 N.J. 175, 196 (1989)). Therefore, the judge may accept or reject some, or all, of an expert's testimony, and may do so even if that testimony is unrebutted by any other evidence. See Johnson v. Am. Homestead Mortg. Corp., 306 N.J. Super. 429, 438 (App. Div. 1997).

The trial court outlined, in extensive detail, why it determined Dr. Goldstein's findings to be biased, incomplete, and unreliable. The court did not

15

state it was rejecting Dr. Goldstein's opinions because of bias, rather it determined the opinions omitted crucial facts detailed by other witnesses, appellant's own admissions, the police reports, and that Dr. Goldstein failed to conduct a thorough second evaluation after the last domestic dispute. The court concluded the expert report should not be afforded any substantial weight and that due to appellant's temperament, it would not be in the best interest of the community for him to possess or obtain a FPIC or firearm. These conclusions are well supported by the evidence.

B.

We next address appellant's contention that the trial court impermissibly relied on hearsay police reports and interviews not subject to cross-examination, violating the Court's mandate in Weston, 60 N.J. at 50-51, that material fact-finding cannot rest on hearsay alone.

Preliminarily, the State presented the officer in charge who denied the application and the detective who performed the investigation to testify regarding the reasons for the denial. The officer in charge also testified about his personal interactions with appellant and K.M. during the 2022 incidents. This complied with Weston's directive for the municipality to "proceed with the evidence on which [the] denial was predicated." Id. at 46. The State also

16

produced police reports prepared following investigations of the earlier incidents.  When the State sought to introduce the reports into evidence, appellant's counsel responded:  "I have no objection."

Although the police report on its own might be admissible under N.J.R.E. 803(c)(6), the statements within it may be inadmissible hearsay unless subject to another exception.  However, there was no objection and in fact, appellant corroborated many of the details in the reports during his own testimony.  See In re Z.L., 440 N.J. Super. 351, 358 (App. Div. 2015) (holding that hearsay from police reports was admissible where the petitioner corroborated their contents with his in-court testimony).

"[H]earsay subject to a well-founded objection is generally evidential if no objection is made."  N.J. Div. of Child Prot. & Permanency v. J.D., 447 N.J. Super. 337, 348-49 (App. Div. 2016).  "When objectionable hearsay is admitted in a bench trial without objection, [this court] presume[s] that the fact[]finder appreciates the potential weakness of such proofs[] and takes that into account in weighing the evidence."  Id. at 349.  Additionally, "on a [d]e novo judicial review of an administrative official's decision" there is "no reason why . . . relevant hearsay evidence of a credible character . . . should not be admitted and considered by the court."  Weston, 60 N.J. at 51.

A-1494-23

However, Weston also cautions that hearsay evidence must be corroborated by substantive and competent proof. Ibid.

Here, in considering the police reports, the trial court relied on this court's jurisprudence in which we held:

> Hearsay is admissible, but there must be sufficient legally competent evidence to support the court's findings. Even if an applicant was previously charged with an offense but not convicted, in a later permit hearing the chief may still present to the court the evidence underlying the charges. "The dismissal of criminal charges does not prevent a court from considering the underlying facts in deciding whether a person is entitled to purchase a firearm or recover one previously taken by the police." Accordingly, the admission of such evidence here was not improper in any respect, and any "hearsay" in the police reports was essentially corroborated by appellant's testimony in court. [This court] find[s] no error in the trial judge's reliance upon that testimony.
>
> [In re Z.L., 440 N.J. Super. at 358 (Internal citations omitted).]

Contrary to appellant's contentions, the holding in In re Z.L. is not inconsistent with United States v. Bruen, 597 U.S. 1 (2022). See State v. Wade, 476 N.J. Super. 490, 502-03 (stating "Bruen expressly endorsed gun-permitting regimes that contained narrow, objective, and definitive standards to guide officials in determining whether applicants were 'in fact, "law-abiding, responsible citizens."'" (quoting Bruen, 597 U.S. at 38 n.9)). Moreover, the

18

constitutionality of the "public health, safety or welfare" requirement under N.J.S.A. 2C:58-3(c)(5) for the issuance of a firearm purchase permit has been upheld following Bruen. In re M.U.'s Application for a Handgun Purchase Permit, 475 N.J. Super. 148, 193-94 (2023).

Here, although some of the documentary evidence might have been hearsay, the judge corroborated such evidence with appellant's own testimony, the observations of the testifying officers, and the judge's own credibility determinations. Therefore, the trial court properly considered the hearsay evidence, as its findings were not entirely based upon that evidence.

For the reasons stated, we are satisfied the trial court supported its determination with sufficient credible evidence in the record and found issuance of a FPIC and permit would not be in the interest of public health, safety or welfare under N.J.S.A. 2C:58-3(c)(5).

C.

The trial court did not address appellant's assertion regarding the propriety of a filing fee in the Superior Court in its oral decision or order. A review of the record reflects appellant filed an appeal to the Superior Court in September 2022. At the time the filing fee for an appeal was $50. See R. 1:43. On January 3, 2023, the rule was amended to reflect the removal of a fee. The amendment

was "effective immediately." Therefore, the Superior Court did not err in requiring a filing fee prior to the amendment of the rule.

To the extent we have not commented on them specifically, all other points raised on appeal lack sufficient merit to warrant discussion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

A-1494-23